UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 09-60863-CIV-COOKE/TURNOFF

COLONY INSURANCE COMPANY,

    Plaintiff
vs.

DEBRA WALLACE,

    Defendant.
_____/

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY FINAL JUDGMENT

THIS CASE is before me on Plaintiff Colony Insurance Company's ("Colony") Motion for Summary Final Judgment on its Amended Petition for Declaratory Relief. (ECF No. 52). I have reviewed the arguments, the record and the relevant legal authorities. For the reasons stated below, Colony's Motion for Summary Final Judgment is granted.

*I. BACKGROUND*

Colony's request for declaratory judgment is a derivative of an underlying state court action in which approximately ninety plaintiffs sued Defendants Lauris Boulanger, Inc., Dania Distribution Centre, Ltd., Dania Distribution Centre, Inc., and Dania Distribution Centre Condominium Association, Inc. (the "Dania Defendants"). The underlying action, *Lueron Dixon, et al. v. Lauris Boulanger et al.*, Case No.: 06-05393 CA 09 (the "*Dixon* lawsuit") has settled. *Dixon* plaintiff Debra Wallace ("Wallace"), however, did not join in the settlement and continues in this action *pro se* as the sole defendant.

In or about March of 2001, the Dania Defendants purchased approximately 15.5 acres of land adjacent to residential neighborhoods in Dania Beach, Florida (the "Dania Property"). [1] Prior to purchase, the Dania Property was used as a landfill for medical waste, petroleum products and various poisonous chemicals. Groundwater assessments conducted in 2000 and 2001 revealed the presence of contaminants such as phenols, benzene, naphthalene, methane, hydrogen-sulfide, ammonia, lead, diesel fuel and chlorinated solvents. Soil samples collected in late November of 2002 revealed that the property had elevated levels of copper, arsenic, barium, chromium, nickel and lead. The levels of arsenic were fifty percent of the allowable levels for a commercial property but twice the allowable levels for residential property. Large quantities of asbestos were also found on the Dania Property.

On June 30, 2003, Scott & Son Engineering, Inc. ("Scott & Son") entered into a subcontract agreement with terminated defendant Lauris Boulanger, Inc., whereby Scott & Son agreed to perform certain groundwork on the Dania Property. Actual construction on the Dania property began sometime after September of 2003. Despite the known presence of toxic chemicals on the property, the Dania Defendants failed to take any steps to protect the residents of surrounding properties from contact with the hazardous pollutants. On January 13, 2004, Colony issued a Commercial General Liability Policy ("Policy") to Scott & Son for the coverage period of January 13, 2004 through January 13, 2005. The Policy was renewed on January 13, 2005 for the coverage period of January 13, 2005 through January 13, 2006. The Policy included certain conditions and/or exclusions that operated to preclude coverage for injuries

---

[1] This Court takes judicial notice that this case is one of four actions deriving from the underlying state court case. The underlying facts giving rise to this dispute are identical to the underlying facts giving rise to the claims asserted in *Essex Ins. Co. v. Dixon* Case, No. 0961755-MGC; *Scottsdale Ins. Co. v. Boulanger*, No. 0961073-MGC; and *Mt. Hawley Ins. Co. v. Dania Distribution Centre Ltd.*, No. 0961275-MGC.

sustained outside of the Policy coverage period or from injuries caused from exposure to hazardous material. In the underlying *Dixon* lawsuit, each of the *Dixon* plaintiffs alleged, individually, that they suffered some form of bodily injury, property damage and/or the loss of use and enjoyment of their real property due to the dispersal of pollutants from the Dania Property. Wallace and her four children account for 10 of the 222 counts enumerated in the *Dixon* Complaint.

**Procedural History**

On April 14, 2010, Colony filed an amended complaint seeking a declaration that it had no obligation to provide insurance coverage for Wallace's injuries because they occurred outside of the Policy's coverage period and are exempt under the Policy's hazardous material exclusion clause. (*Amended Complaint*, ECF No. 14). Wallace did not respond to the amended complaint. On May 11, 2010, Colony moved for entry of a Clerk's default. (*Motion for Entry of Clerk's Default*, ECF No. 15). On May 12, 2010 the Clerk denied Colony's motion for entry of default due to Colony's failure to verify service of process. (*Order by Clerk of Non-Entry of Default*, ECF No. 16). On May 25, 2010, Colony filed a Motion for Entry of Court's Default. (*Motion for Entry of Court's Default*, ECF No. 17). The very next day, counsel for the Dania Defendants and the *Dixon* Plaintiffs, including Wallace, filed a Motion to Withdraw as Attorney (*Motion to Withdraw*, ECF No. 18), which was granted on June 4, 2010 (*Order Granting Motion to Withdraw*, ECF No. 19). In light of the withdrawal of defense counsel, I denied Colony's motion for entry of default as it was "unlikely that [Wallace] received a copy of [Colony's] complaint." (*Order Denying Motion for Entry of Clerk's Default*, ECF No. 20). Colony was further instructed to properly serve Wallace with the amended complaint. (*Id.*). On August 5, 2010, Colony filed a Return of Service, noting that it served Wallace with the amended complaint on

July 17, 2010. (*Summons Returned Executed*, ECF No. 28). Pursuant to Federal Rule of Civil Procedure 15(a)(3), Wallace's response was due on or before August 2, 2010.

On September 17, 2010, Colony again moved for entry of Clerk's default (*Motion for Entry of Clerk's Default*, ECF No. 29), which was granted on September 21, 2010. (*Order by Clerk of Entry of Default*, ECF No. 30). Colony appropriately moved for entry of default judgment on September 27, 2010. (*Motion for Default Judgment*, ECF No. 31). On September 28, 2010, Wallace moved to set aside the Clerk's entry of default claiming that she never received a copy of the amended complaint. (*Motion to Set Aside Default*, ECF No. 36). On September 30, 2010, the parties were ordered to show cause why default judgment against Wallace should, or should not, be entered. (*Order to Show Cause*, ECF No. 42). Colony and Wallace filed their responses to the Order to Show Cause on October 7, 2010 and November 3, 2010, respectively. (*Responses to Order to Show Cause*, ECF Nos. 46, 47). On December 2, 2010, I vacated the entry of default and ordered Wallace to answer the amended complaint by December 23, 2010. (*Order Granting Motion to Set Aside Default*, ECF No. 51).

On January 4, 2011, Wallace moved for an extension of time in which to answer the amended complaint. (*Motion for Extension of Time to File*, ECF No. 54). That same day, Wallace also filed a Response to Order to Show Cause expressing her desire to remain an active litigant in this case. (*Response to Order to Show Cause*, ECF No. 55). On January 12, 2011, Magistrate Judge Ted E. Bandstra granted the extension of time, but cautioned Wallace that no further extensions would be granted. (*Order Granting Motion for Extention of Time*, ECF No. 56). Pursuant to Judge Bandstra's order, Wallace's answer to the amended complaint was due by January 19, 2011. (*Id.*) On January 20, 2011, Wallace filed a letter with the Court noting her continuous effort to respond to prior Court orders. (*Response to Order to Show Cause*, ECF No.

4

57).  Wallace expressed concern regarding the related settlement and dismissal of *Essex Ins. Co. v. Dixon* Case, No. 0961755-MGC, and requested that the Court "not allow this case to be dismiss[ed]." (*Id.*).  Wallace did not file a response to the amended complaint.

A status conference was held on April 6, 2011.  At the conference, the Court instructed Wallace of the requirements of the Federal[2] Rules of Civil Procedure, the substantive content of Colony's amended complaint, and the legal significance of a response to Colony's claims or lack thereof.  Wallace was provided with all relevant case filings – amended complaint, motion for entry of default judgment, motion for summary judgment – and was instructed to file an answer by May 6, 2011.  Wallace was cautioned that her failure to file a response would result in an entry of default.  On May 5, 2011, Wallace filed copies of several documents, all of which were previously filed with the Court.  At best, Wallace's filing can be construed as a response to the motion for default judgment and a response to the motion for summary judgment.  Wallace did not file a response to the amended complaint.

**Colony Insurance Policy**

Pursuant to the Policy's terms and conditions, Colony is required to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (*Colony Commercial General Liability Policy*, ECF No. 14, Ex. A).  Bodily injury is defined as "sickness or disease sustained by a person, including death." (*Id.*)  The Policy includes an 'occurrence exclusion clause' under which Colony is only liable for bodily injury that "occurs during the policy period." (*Id.*)  In addition, the Policy contains a clause that excludes liability for damages resulting from hazardous materials. (*Id.*)

---

[2] Wallace refiled copies of the motion for default judgment and motion for summary judgment with notes and comments in the margins, indicating which statements, clauses or paragraphs she disagreed with or did not understand.

Colony has no duty to defend claims that are not covered under the policy including claims specifically omitted by exclusionary clauses. (*Id.*) Colony now asks this Court to declare that it has no duty to provide insurance coverage to Wallace in the underlying action due to the Policy's occurrence exclusion clause and hazardous materials exclusion clause.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A fact is 'material' when it relates to substantive law at issue in the case and may affect the outcome of the nonmoving party's claim. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party "may not rest upon the mere allegations or denials of her pleadings, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson* 477 at 248 (1986). The court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

## III. ANALYSIS

### A. Wallace Has Failed or Otherwise Refused to Answer the Amended Complaint.

A *pro se* litigant's pleadings must be construed more liberally than pleadings drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Miller v. Donald*, 541

F.3d 1091, 1100 (11th Cir. 2008) ("*pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed") (citations omitted). From the onset, this Court has afforded Wallace with considerably leniency in the timeliness and form of her *pro se* filings. Although *pro se* litigants are entitled to have their pleadings liberally construed, such liberal construction does not extend to a *pro se* litigants failure to comply with either the federal procedural rules or local court rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Wayne v. Jarvis*, 197 F.3d 1098, 1104 (11th Cir. 1999) ("[l]iberal construction does not mean liberal deadlines").

On April 6, 2011, nearly one year after Colony filed its amended complaint, the Court advised Wallace that she was required to file an appropriate answer. Although Wallace filed documents purported to be an "answer," her filings do not even remotely rise to the level of an interpretable response to Colony's pleadings. The leniency afforded to pro *se* litigants "does not give a court license to serve as *de facto* counsel for a party … or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted). As of the date of this order, Wallace has failed or otherwise refused to answer the amended complaint.

### B. Colony Has No Duty to Provide Coverage for Wallace's Claims.

The insurer's duty to defend the insured depends solely on the allegations filed in the complaint. *Tropical Park, Inc. v. United States Fidelity and Guaranty Co.*, 357 So. 2d 253, 256 (Fla. Dist. Ct. App. 1978). "The complaint must allege facts which fairly bring the case within coverage. … If, [however], the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit." *Id.* If after examining the allegations of the complaint there remains any doubt regarding the insurer's duty to defend, then

the presumption is in favor of the insured. *Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580-81 (11th Cir. 1995). There is no duty to defend the insured when "the allegations of the initial complaint do not allege facts which would bring the case within the coverage of the title insurance policy." *Chicago Title Ins. Co. v. CV Reit, Inc.*, 588 So. 2d 1075, 1075-76 (Fla. Dist. Ct. App. 1991). And an insurer has no duty to indemnify when it has no duty to defend the insured. *See Spencer v. Assurance Co. of America*, 39 F.3d 1146 (11th Cir. 1994).

**Occurrence Exclusion Clause**

"When an insurer relies on an exclusion [clause] to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation. Exclusionary clauses are generally disfavored." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1359 (M.D. Fla. 2001) (citing *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. Dist. Ct. App. 1997)). Colony argues that the Policy's occurrence exclusion clause precludes coverage for Wallace's claims. Under the Policy's occurrence exclusion clause, any claim for damages must be based on an injury that occurred during the policy period. (*Colony Commercial General Liability Policy*, ECF No. 14, Ex. A). The general rule, in Florida, for determining the time of occurrence is when the injury first manifests itself. *Travelers Ins. Co. v. C.J. Gayfer's & Co.*, 366 So. 2d 1199 (Fla. Dist. Ct. App. 1979).

It is undisputed that the Policy coverage period was from January of 2004 until January of 2006. When deposed, Wallace stated that all of her symptoms including dizziness, loss of balance, spitting up of blood and mucus, burning of eyes and skin, as well as irritated skin and lesions began sometime between 2002 and 2003.

> Q. Miss Wallace when the first time you started to exhibit the symptoms that you complain and suffer from?

8

| | |
|---|---|
| A. | Are you speaking about my symptoms? |
| Q. | Yes. |
| A. | I noticed them when we were living in Dania shortly after they started to dig and, you know, do whatever they do as far as construction. |
| Q. | Do you remember about the time span when you first noticed your symptoms? |
| A. | It was shortly after I remember the dust blowing in. I don't know the time frame. I would say 2002, 2003 roughly. |

(*Wallace Dep.* 75:6-18, ECF No. 52, Ex. 1). Clearly, Wallace's symptoms "occurred" prior to the Policy's effective date. Colony has no duty to provide coverage for the Wallace's injuries.

**Hazardous Materials Exclusion Clause**

Colony further argues the hazardous materials exclusion clause bar coverage. The Policy states that insurance does not apply to "'[b]odily injury' … which would not have occurred in whole or part but for the actual, alleged or threatened discharge dispersal, seepage, migration, release or escape of 'hazardous materials' at any time." (*Colony Commercial General Liability Policy*, ECF No. 14, Ex. A). Hazardous materials is defined as "'pollutants, lead, asbestos, silica and materials containing them." (*Id.*) The policy further defines pollutants to include "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." (*Id.*)

Wallace alleges that her bodily injuries arose from the excessive dust, noise and damage caused by the construction and discharge of pollutants on the Dania property. All bodily injuries alleged were caused by hazardous materials as defined in Colony's insurance policy. Wallace's claims, therefore, do not fall within the Policy coverage.

### *IV. CONCLUSION*

For the reasons set forth above, I **ORDER** and **ADJUDGE** that Colony's Motions for Summary Final Judgment (ECF No. 52) is **GRANTED**. The Clerk is directed to **CLOSE** this case. All pending motions, if any, are **DENIED** *as moot*.

**DONE AND ORDERED** in Chambers, at Miami, Florida, this 28th day of June 2011.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of Record*

Debra Wallace
3766 NW 201 Terrace
Miami Gardens, Florida 33055